## GEORGE W. PIPER

### *v.*

### JOHN JOHNSTON, *et al.*

*Held :* that our statute authorizing an appeal from an order involving the merits of the action, or any part thereof, gives an appeal from every order which passes upon and determines the positive legal rights of either party.

On a report of a referee, decision of a Court, or verdict of a jury, the prevailing party may perfect judgment, in either legal or equitable cases, without notice to the adverse party, or a special application to the Court.

A deed made with intent to hinder, delay and defraud creditors, is valid as to every person but those intended to be defrauded thereby, and the grantor in such deed is not thereafter entitled to the homestead rights secured to the "*owner*" of lands, &c.

Where the wife of the defendant acquired no estate in the lands as against the plaintiff, the defendant can not *as tenant by the curtesy* have any rights as against the plaintiff.

Where the judgment would be a lien on the homestead, a conveyance made by the owner with intent to defraud creditors is void as to such creditors.

An appellate Court will not on appeal set aside proceedings on account of the insufficiency of the complaint, unless it is substantially defective.

This action was brought in the District Court for Nicollet County, for the purpose of setting aside certain deeds conveying certain premises owned by defendant John Johnston, from him, through the defendant Pratt, to the defendant Ellen S. Johnston, wife of said John Johnston, as void as against the plaintiff. The defendant Pratt did not appear or answer in the action; the other defendants answered, and issue was joined. The cause was tried before a referee, who filed his report in favor of plaintiff, bearing date January 30, 1864.

On the 13th December, 1864, the clerk of said Court entered judgment upon the report, without any previous application being made to the Court, or order obtained therefor, and without any notice to the defendants. At a general term of the District Court for Scott County in April, 1865, a motion was made on behalf of defendant John Johnston, upon notice, "for an order to vacate and set aside, or declare void, a pretended decree in said action, signed by and filed in the office of the clerk of the District Court in and for the said County of Nicollet, and also for a decree in said action of the purport, substance and effect mentioned and specified in the prayer of the petitioner" (defendant John Johnston): which motion was denied, and from the order denying the same, defendant appeals to this Court. A sufficient statement of the pleadings, and the findings of the referee, and of the petition used on said motion, appear in the opinion of the Court.

A. G. CHATFIELD, for Appellant.

AUSTIN and WARNER, for Respondent.

*By the Court*—WILSON, CH. J.—This action was commenced for the purpose of having declared void, as against the plaintiff, certain deeds of conveyance made by the defendant John Johnston, and the defendant Pratt, to the defendant Ellen S. Johnston. The plaintiff was a creditor of the defendant John Johnston, and alleges that said deeds were made with intent to hinder, delay and defraud him in the collection of his said debt. Pratt did not answer: the other defendants answered, denying any fraudulent intention, or that said deeds were void. The issues were referred for trial to Franklin H. Waite, Esq., as sole referee, who found and reported as matters of fact, "that the defendant John Johnston was justly in-

debted to the plaintiff, as early as July 1857, on which in-
debtedness the plaintiff recovered a judgment for $2,941.29 in
the District Court of Nicollet county, which was rendered
and docketed in said county on the 17th day of December,
1857. On the next day execution was issued upon said judg-
ment to the Sheriff of said county, and on the second day of
February thereafter the same was returned by the Sheriff with
an endorsement of $862.57 as made thereon, and no property
found for the balance. That the said John Johnston, on the
8th of March, 1856, took a deed from the Hon. A. G. Chat-
field, the Judge of the County Court of the said county of
Nicollet, and who as such judge had personally entered, and
then held in trust, the town site of St. Peter, conveying to
him (Johnston) the title to lots three and four, of block two
hundred and five, in the town of St. Peter. That the said
John Johnston contracted said debt to the plaintiff, while he
was seized of said lots. That on the 29th day of October A.
D. 1857, the defendant, John Johnston and Ellen S., his
wife, conveyed said lots by deed to Benj. F. Pratt, and on
the same day, he (Pratt) conveyed the same lots to Ellen S.
Johnston. That said deeds were made while said Johnston
was in failing circumstances, and the object of both convey-
ances was to convey the title to Ellen S. Johnston, to the ex-
clusion of the creditors of said John Johnston, probably then
estimating the premises to be worth more than $1,000, * *,
and both deeds were without consideration. * * I do not
find that said lots were, in law or equity, the separate property
of Ellen S. Johnston, as against the plaintiff, a creditor of
John Johnston: but I do find that said lots, containing less
than three fourths of an acre, and the dwelling house and ap-
purtenances situated thereon, were occupied by the said John
Johnston and his family as a homestead, (he then and now
being a householder) at the time of the creation of the debt

to the plaintiff, and ever since have been and still are so occupied.

As a conclusion of law, I find that the said judgment was recovered while the exemption laws of 1851 were in force, and the plaintiff, at the time of docketing thereof, acquired a complete lien upon said premises, subject to the said homestead exemption of said John Johnston and his family, and that the subsequent exemption laws of 1858, do not affect the judgment. * As a fourth conclusion of law, I find that the conveyance from John Johnston and wife to Pratt, and also the conveyance from him to said Ellen S. Johnston, are fraudulent and void, as to said judgment."

The report of the referee was dated January 30th, 1864. On the 13th day of December, 1864, the clerk entered a judgment purporting to pursue and follow the report, adjudging that said deeds were void, as against the plaintiff, his heirs and assigns, and that the premises should be subject to the lien of the judgment, "and be sold and conveyed in satisfaction thereof, free and clear of any and all liens or claims of homestead or otherwise, save only the right of redemption from the sale thereof, and of possession as in all cases of sales of real estate on execution, and that the proceeds of such sale be, after deducting the fees and expenses of such sale, paid to the plaintiff or his attorney, and applied in satisfaction of the plaintiff's demand and judgment."

On the 4th of April, 1865, the defendant John Johnston, by his attorney, gave notice to plaintiff's attorney, that a motion would be made on the 17th day of April, 1865, by and on behalf of John Johnston, "for an order to vacate, set aside, and declare void, a pretended decree in said action, and also for a decree in said action of the purport, substance and effect mentioned and specified" in a petition, a copy of which was served with said notice. The petition, after reciting the pen-

dency of the action, the reference, and the report of the referee, states, among other things, "that since the making and filing of the report of the referee, the said Ellen S. Johnston has died. That in consequence of the death of his said wife, your petitioner is desirous that his homestead right in said premises may be determined, confirmed and established by the decree of the Court. And said petition further shows, that since the making and filing of the said report of said referee, the said plaintiff has caused to be made and signed by the clerk of this Court, and filed in his office, a paper in the form of and purporting to be a decree of this Court in this case: that the said plaintiff so caused the said paper, purporting to be a decree in the case, to be signed by the clerk, and filed in his office, without any application to the Court therefor, and without any notice thereof to your petitioner, or his attorney, and without any order or direction of the Court, or a judge thereof, or any other authority, or pretended authority therefor, than the said report of the said referee. .

The petitioner then prays, that his homestead exemption right in and to the said premises, may be determined, confirmed and established, and that the paper purporting to be a decree may be vacated, set aside and declared void."

The motion for the order prayed for was made and heard at a general term of the District Court of Scott county, in April, 1865, and denied. From the order denying this motion, the defendant, John Johnston, appeals. The case was submitted to this Court on written arguments. The plaintiff's counsel makes a preliminary motion, that the appeal be dismissed, on the ground, 1st, that it does not appear from what order or judgment, if any, an appeal has been taken; and 2d, that the order appearing in the paper book is not appealable. Appellant's counsel argues, 1st, that the judgment or decree entered without notice to the defendant, or order of the Court,

Piper v. Johnston et al.

is void; 2nd, that the judgment is unauthorized by the report of the referee; and 3d, that the complaint is fatally defective.

We think it sufficiently appears from what order this appeal is taken. Our statute authorizes an appeal from an order involving the merits of the action, or any part thereof. This provision gives an appeal from every order which passes upon and determines the positive legal rights of either party. *Chouteau vs. Parker*, 2 *Minn.*, 120. If the plaintiff had no legal right to take judgment without a special application to the Court, on notice to the defendant, the judgment is unauthorized, and the appellant has a strict legal right to have it vacated and set aside, and an order denying such relief is subject to review in this Court. It is also held in *Earl vs. Caldwell*, 3 *Minn.* 140, that "the proper remedy, when a party enters a judgment not warranted by the verdict, is by an appeal to the Court in which it is entered to correct the record or vacate the erroneous judgment." In principle it cannot be material whether the judgment is entered on a verdict, or on the report of a referee. The aggrieved party has a legal right to have the error corrected, and if this is the proper remedy, the order made on such application involves the merits. We will examine, therefore, 1st, whether the judgment in this case was in violation of law, because entered without application to the Court on notice to the defendant; and, 2d, whether the report justified the decree entered. Our statute, and the rules of practice of the Courts, would seem to set the first question at rest. *Comp. Stat.*, Sec. 71, 72, *page* 566; *Ib. Sec.* 67, *page* 565; *Ib. Sec.* 41, *page* 562; *Ib. Sec.* 54, *page* 564; *Rules Dist. Court* 37, 38.

From these statutory provisions and rules, it clearly appears to be competent for the clerk to enter judgment on a verdict, decree of the Court, or report of a referee, without any special order of the Court to that effect, and without notice to the

other party: and the rule seems to be the same in equitable as in legal proceedings. *Comp. Stat., page* 480, *Sec.* 19, 20; and *Rules of Court* above referred to; *Cathcart vs. Peck,* 11 *Minnesota* 45. There can be little doubt but that it would be better practice, to have the judgment or decree in equitable proceedings, settled by the Court or Judge, after notice to the other party; but this is a matter of practice that we have not the power to regulate, and the prevailing party takes his judgment at his peril: if erroneous it will be corrected on motion. Whether the judgment is authorized by the report of the referee is the principal question in this case. We think it is. The objection urged to the judgment is, that it deprives the appellant of the homestead exemption secured to him by law. The judgment does not seem, in all respects, consistent with the legal conclusions of the referee, but that is not very material if it is supported by the facts found. If the judgment is the proper one to be entered in the case, it should not be set aside because the referee took an erroneous view of some of the legal questions involved. *Sec.* 1, *page* 459, *Comp. Stat.,* provides that every conveyance or assignment of an estate or interest in lands made with the intent to hinder, delay and defraud creditors, as against the persons so hindered, delayed or defrauded, is void. This statute is, perhaps, merely declaratory of the common law. It follows closely the language of 13 *Eliz. Ch.* 5, which has been re-enacted in many of the States with very little variation, and which is considered as only declaratory of the principles of the common law. *Callagan vs. Kennett, Cowp.* 434; *Hamilton vs. Russell,* 1 *Cranch,* 316; 2 *Kent's Com.,* 440 *and note:* 2 *Snyder,* (1 *Am. Ed.*) 926, *note;* 1 *Am. Lea. Cas.* (4*th Ed.*) 36, 39, *and cases cited.*

The report of the referee settles the fact that the conveyances attacked in the case were made with the intent to de-

fraud the plaintiff, who was, at the time, a creditor of John Johnston, and it is clear on principle, and well established by very numerous cases decided under the common law, and under statutes substantially the same as ours, that such conveyances are void as against the plaintiff, and valid against persons standing in the position of John Johnston, and those claiming under him. *LeMay vs. Bibeau*, 2 *Minn*. 291, and cases there cited; 1 *Am. Lea. Cas.* (*4th Ed.*) 45, and cases cited. How then can the appellant have a homestead right in the premises in question, as against the plaintiff, or against any person? He is estopped to deny the validity of said deeds, which as against every person but those whom he intended to defraud thereby, are valid. A person is not allowed to defeat his contract or deed, by alleging his own turpitude. These deeds conveyed out of the appellant the entire estate legal and equitable. He is no longer owner, and the homestead law secures a homestead only to the owner. If any estate or interest in this land is exempt from execution, it must be in favor of the owners, now the heirs of Ellen S. Johnston. The contest is essentially between them and the plaintiff. If there is any surplus after paying the plaintiff's claim, it must be paid to the grantee, though a fraudulent grantee. *Burch vs. Elliott*, 3 *Ind*. 100; *Sumner vs. Sawtelle*, 8 *Minn*. 309. The grantees of the appellant set up no claim to a homestead right, nor could they maintain such claim. But it is urged that as tenant by the curtesy, the appellant is " owner " of the lots, and *therefore* entitled to the benefits secured by the homestead law. Many objections might be urged to this position, but one is conclusive. His claim as tenant by the curtesy, is under the deeds which the law declares *void as against the plaintiff*. His claim to the estate is by virtue of the seizin of his wife, but the law declares that the wife acquired no estate under these deeds as against the plaintiff, and

she having acquired no estate, he, of course, can have no valid claim as tenant by the curtesy. This seems too clear to admit of argument or doubt. It is urged that the debtor cannot practice a fraud upon his creditor by any disposition which he may make of property exempt from execution. As applied to this case, there is no force in the argument. It is not shown, nor do the allegations of the pleadings, or the report of the referee justify us in presuming, that the property thus conveyed was, as a whole, exempt as a homestead. Admitting that the appellant had a right to hold part of the property as a homestead, or that when sold on execution he was entitled to a part of the proceeds, this certainly gave him no right to convey it as an entirety, without consideration, and for the purpose of defrauding his creditors. But even if all the property conveyed was exempt, it would not affect this case. Under our law when these conveyances were made, a judgment was a lien on the homestead, and when the judgment debtor removed from, or sold his homestead, it at once became subject to sale on execution, in satisfaction of the demand of the judgment creditor. Here was a valuable right secured by the law to the plaintiff, which the appellant fraudulently attempted to deprive him of. These deeds were, therefore, not only fraudulent, but prejudicial to the plaintiff, and they come within both the letter and spirit of the law which declares fraudulent conveyances void as against persons hindered, delayed or defrauded.

The objection that the plaintiff does not show that he was a creditor of John Johnston at the time of the execution and delivery of said conveyances, cannot be sustained. The most that can be said against the complaint in this respect is, that it is indefinite or uncertain. The plaintiff alleges that " at the time the said John Johnston executed and delivered the said notes (on which judgment was subsequently allowed) above

described to the plaintiff, the said John Johnston was the owner in fee simple" of the lots in question.

"Plaintiff further says that the said John Johnston and Ellen S. Johnston his wife, combining and confederating with one B. F. Pratt, to cheat, delay and defraud the creditors of the said Johnston * * did jointly make, execute and deliver what purports to be a warranty deed, and the said Pratt" &c. The fair and natural meaning of this language is, that the making of said deed was subsequent to the making of the promissory note, and the answer and report of the referee shows this to be the fact.

An appellate Court will not, on appeal, set aside proceedings on account of the insufficiency of the complaint, unless it is clearly and substantially defective. We have carefully examined the case of *Dentzer vs. Bell*, 11 *Wis.* 114, and think it may, in some respects, be distinguished from this, but we do not wish to be understood as assenting to the *dictum* of that case.

The view which we take makes it immaterial whether the plaintiff claims under the law of 1851, or the law of 1858, and we, therefore, do not discuss that question. The judgment entered below is, we think, in accordance with and supported by the facts found by the referee.

The order appealed from is affirmed.