WILLIAM H. C. FOLSOM, E. W. SOMERS, AND G. M. STICKNEY, Appellants, against CHRISTOPHER CARLI, Respondent.

### APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

The endorser of a promissory note may at any time after it becomes due pay the amount to the legal holder, and at once proceed to enforce it against the maker; or, in case several judgments have been obtained on such an instrument against him and the maker, may pay the judgment against himself, take an assignment of that against the maker, and enforce it in his own behalf. Our Statute, (*Comp. Stat. p.* 535, *sec.* 36,) which authorizes a Plaintiff, at his option, to include in one action all persons severally liable upon the same obligation or instrument, including the parties to bills of exchange or promissory notes, and sureties on the same, does not change the rule in this State.

A Sheriff is not required to state in his return the particular facts constituting a levy; and a general return that he has "levied" upon property is sufficient, and cannot be disputed except in a direct proceeding against the officer or his sureties for a false return: where a judgment is a lien upon real property, a formal levy upon such property is not required; and the provision of Statute that "until a levy property is not affected by the execution," applies to a levy upon personal property only.

Under the Homestead Exemption Law of this State (prior to the act of March 10, 1860, providing that a judgment debtor may remove from or sell the homestead without subjecting it thereby to a sale on execution,) a judgment lien attached to the homestead as well as to any other real property of the judgment debtor; and the exemption of the homestead was only an exemption from sale on execution while occupied by the debtor or his family, but did not affect the lien of the judgment.

Points and authorities of Appellants:

*First.*—Where, under the Statutes of Minnesota, an action is brought by the endorsee of a promissory note against the makers and endorser, and one judgment entered against all the Defendants, payment of the amount of the judgment by the endorser to the endorsee (Plaintiff), and an assignment of the judgment by the Plaintiff to a stranger, does not extin-

guish the judgment, and is not a satisfaction of it as against the makers of the note. *Low vs. Copestake*, 3 *Cor. & P.* 300; *Chitty on Bills* (*Springfield ed.* 1836,) 567; 20 *Johns.* 369; *Havens vs. Huntington*, 1 *Cow.* 387; *Ainslee vs. Wilson*, 7 *Cow.* 662; *Hargar vs. McCullough*, 2 *Denio*, 119; *Clason vs. Morris, et al*, 10 *Johns.* 524; 1 *Johnson's Cases*, 137, *in the matter of McKinley; Stiles vs. Eastman*, 1 *Kelly*, (*Geo.*) 205; *Wilson vs. Wright*, 7 *Rich*, (*S. C.*) 399; *Corey vs. White*, 3 *Barb. S. C.* 12; *Kelsey vs. Bradbury*, 21 *Ib.* 531; *Min. Com. Stat.* 535, 536; *Ib.* 574, 121; 3 *N. Y. Rev. Stat.* 658, 659, 99–104; *N. Y. State Bank vs. Fletcher*, 5 *Wend.* 85.

*Second.*—The judgment in the complaint mentioned was from the date of being docketed a lien upon the premises described in the complaint, and at the time of the sale complained of, the said premises were subject to levy and sale under execution, the exemption continuing only during the occupancy of the premises by the judgment debtor, his widow or minor child. *Min. Comp. Stat.* 566–577; *Ib.* 569–592; *Min. Rev. Stat.* 363–393; *Min. Sess. Laws*, 1860, 286.

*Third.*—The question of levy or no levy could only be determined by the Sheriff's return, and that return could not be contradicted or impeached in this kind of action. *Tullis vs. Brawley*, 3 *Min.* 277; *Messer vs. Bailey*, 11 *Foster N. H.* 9; *Hollowell vs. Paige*, 24 *Mis.* 590; *Newton vs. The State Bank*, 14 *Ark.* 9; *Castner vs. Styer*, 3 *Labr.* 236; *Huntress vs. Tiney*, 39 *Maine*, 237; *Clough vs. Monroe*, 34 *N. H.* 381; *Ladd vs. Wiggin*, 35 *N. H.* 421.

*Fourth.*—A Sheriff's return should not be impeached or disregarded before the Court when it could not be contradicted, impeached, or disregarded before a jury. *Angell vs. Rowler*, 3 *R. I.* 78; *Dillingham vs. Higgins*, 26 *Mis.* 180; *Pratt vs. Phillips*, 1 *Sneed.* 543.

*Fifth.*—It was not requisite that the Sheriff should set forth in his return all the acts done to constitute a levy or the attendant circumstances. *Tullis vs. Brawley*, 3 *Minn.* 277; *Van Kirk vs. Wilds*, 11 *Barb. S. C.* 520.

*Sixth.*—The levy having been made within sixty days after the execution came to the hands of the Sheriff, the sale could be legally made after the sixty days. *Pettengill vs. Moss, et*

*al,* 3 *Min.* ·222; *Devoe vs. Elliott,* 2 *Caines,* 243; *Wood vs. Calvin,* 5 *Hill,* 228.

*Seventh.*—If the execution and levy, or either of them, was irregular, insufficient or void, such fact did not warrant a judgment declaring the judgment referred to in the complaint *not* to be a lien on the premises in controversy.

Points and authorities of Respondent:

*First.*—The complaint in this action states a cause of action sufficient in law upon two sets of allegations, viz: 1st. The facts showing that there was no levy; and, 2d. The facts showing a satisfaction of the judgment under which the property is claimed by and for the benefit of Folsom.    To first branch refer to *Castner, et al, vs. Symonds,* 1 *Min.* 472, &c. Second branch *Harbeck, et al, vs. Vanderbilt,* 20 *N. Y. Rep.* 395, &c.; *Col. Rev. Stat. p.* 574, *sec.* 120; *Rev. Stat. relating to levy.*

*Second.*—The answer does not contain any denials competent to put in issue the substantive allegations of the complaint, being " on belief" of matters presumptively within the knowledge of the Defendant, and in the form of a negative pregnant, of conclusions of law.    *Vide 5th ̈ ed., Voorhee's Code, and cases cited,* 165; *Van Sant. Pl.,* 2d *ed..* 409–412, 416, 417, 419, 421, 425–430, *and cases cited.*

W. H. BURT, Counsel for Appellants.

J. B. BRISBIN, Counsel for Respondent.

*By the Court*—EMMETT, C. J.,—The indorser of a promissory note may, at any time after it becomes due, pay the amount to the legal holder, and at once proceed to enforce it against the maker, or in case several judgments have been obtained on such an instrument, against him and the maker, may pay the judgment against himself, take an assignment of that against the maker and enforce it in his own behalf. These are propositions too well settled to require a reference to authorities, and are fully sustained by the cases referred to in the appellants' brief.    And they necessarily dispose of the

first branch of the plaintiff's case, unless our statute,—which authorizes a plaintiff, at his option, to include in one action all persons severally liable upon the same obligation or instrument, including the parties to bills of exchange or promissory notes, and sureties on the same, (*Com. Stat.*, 535, *sec.* 36,)—changes the law as to this State. We cannot believe, however, that any such change was intended. The Legislature sought by the provision referred to, merely to avoid a multiplicity of actions, but never intended thereby to put it in the power of the holders of such instruments to change or in any way affect the legal or equitable rights of the persons liable thereon, in their relations or responsibilities to each other, by any course or form of action they might pursue. The holder of the note, on which the judgment referred to in the pleadings in this case was rendered, might, notwithstanding this statute, have obtained separate judgments against both makers and indorser, in which event, as we have before stated, Folsom, the indorser, might have paid the judgment against himself, taken an assignment of the judgment against the makers, and enforced the latter to reimburse himself. And should he now be deprived of this right as against the makers who are liable over to him, and be driven to the trouble and expense of another action, simply because the holder of the note saw proper to proceed under the statute, and obtain a judgment against both makers and indorser in one action?

The indorser has, in this case, paid the judgment and taken an assignment to a third person, who enforced it against the makers. This he had a perfect right to do, even without the intervention of a third person as assignee. He might have taken the assignment directly to himself.

But the plaintiff further claims that the execution afterwards issued to enforce this judgment, was never, in fact, levied upon the real estate in controversy. To this the defendants answer, that the Sheriff returned generally that he had " levied upon " the property—that such general return is sufficiet, and its truth or falsity cannot be enquired into in this action.

This Court held in *Tullis vs. Brawley*, 3 *Min.*, 277, and *Rohrer vs. Terrill*, 4 *Min.*, 407, that a Sheriff was not re-

quired to state in his return the particular facts constituting a levy ; that a general return that he had " levied upon" property was sufficient, and could not be disputed, except in a direct proceeding against the officer, or his sureties, for a false return ; and in the former case we also held that where a judgment was a lien upon real property, a formal levy upon such property was not required, and that the provision of statute, that " until a levy property is not affected by the execution " applies to a levy upon personal property only.

These decisions fully dispose of the second branch of the Plaintiff's case, leaving only the question as to the lien of the judgment upon the homestead of the judgment debtors.

The real estate in controversy at the time the judgment above spoken of was rendered and docketed, was occupied by one of the judgment debtors as a homestead, and had been set off to him as such. It was afterwards conveyed to the plaintiff in this action, but before the levy and sale mentioned in the pleadings. It is now urged that because the property was, as a homestead, exempt from sale in the hands of the judgment debtor, it remained so exempt in the hands of his grantee, and that the judgment was never a lien upon it.

We cannot adopt this view of the case. The statute in force at the time made the judgment a lien from the time of docketing, on " *all* the real property of the judgment debtor in the county, owned by him at the time or afterwards acquired." (*Com. Stat.*, 566, *sec.* 76–7.) And although by another provision of the statute, (*Rev. Statutes of* 1851, *p.* 363, *sec.* 93,) the homestead owned and occupied by the debtor as a residence, was exempted from *sale* on execution, yet it does not appear to affect the lien of the judgment given by the sections before referred to. This exemption from sale was continued even after the death of the judgment debtor so long as the premises were occupied as a homestead by the widow, (she continuing unmarried,) and until the youngest child attained its majority, or some one of them continuing to occupy the same as a homestead. It will be observed, however, that the statute, without mentioning the lien of the judgment, merely suspended the sale of the homestead so long as it was occupied as such by the debtor, his widow or minor

children; but the inference is clear, from the language used, that so soon as it ceased to be thus occupied—when the debtor, his widow or minor children abandoned it as a residence, or if the widow married again, and the children all attained full age, the exemption ceased, and the lien of the judgment could be enforced by a sale on execution. Occupancy as a residence, by some one or more of the persons named, is made a condition for the continuance of the exemption, and the exemption was but a personal privilege, which the parties for whose benefit it was intended, might lose by abandonment.

We hold that, under the exemption law, as it existed at the time this judgment was rendered and docketed, and the property sold, the lien of the judgment attached to the homestead as well as to any other real property of the judgment debtor—that the exemption of the homestead was only an exemption from sale on execution, while occupied by the debtor or his family, but did not affect the lien of the judgment. That when McKusic, the judgment debtor, abandoned the property as a residence, and conveyed it to another, the exemption ceased, and the judgment creditor had then the right to enforce his lien by a sale of the premises on execution, and that the grantee, Carli, took the property, subject to the lien of the judgment.

It would seem also that the Legislature has given a similar construction to this law by the act of March 10, 1860 ; for in providing that a judgment debtor may now remove from, or sell the homestead, without subjecting it thereby to a sale on execution, it was found necessary to deprive judgments of any lien upon the homestead.

The point which the Plaintiff makes as to the verification of the answer, we consider as waived by receiving and retaining that pleading without objection. But giving the objection full force, it would not avail the Plaintiff in this action, for under the view we have taken of the case, he would not be entitled to a judgment had his whole case been admitted by the answer.

Judgment reversed.